UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
|  | * |  |
| AMY DOUCET and DENISE SUTTON as Co-Guardians of PAUL GREGORY DOUCET, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10514-ADB |
| | * | |
| FCA US LLC, f/k/a CHRYSLER GROUP, LLC, SUDBAY CHRYSLER DODGE, INC., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON FCA US LLC'S MOTION TO DISMISS
AND DOUCET'S MOTION TO REMAND TO MASSACHUSETTS SUPERIOR COURT**

BURROUGHS, D.J.

This products liability action originated in Suffolk County Superior Court when Plaintiffs

Amy Doucet and Denise Sutton filed a complaint in their capacity as court-appointed guardians

on behalf of Paul Doucet ("Doucet"). [ECF No. 1-3 ("Compl." or "Complaint") ¶ 1]. Doucet

alleges that he suffered severe and debilitating injuries due to defects in the design and

production of a Chrysler Sebring convertible that was involved in a car accident in May 2015.

[Compl. ¶ 10–31]. Defendant FCA US LLC ("FCA") removed the action to federal court,

asserting jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1334(b). [ECF No. 1 at 1–2].

Before the Court are FCA's motion to dismiss, [ECF No. 9], and Doucet's motion for

remand to state court, [ECF No. 14]. FCA opposed Doucet's Motion for Remand on May 2,

2019, [ECF No. 19], and Doucet opposed FCA's Motion to Dismiss on June 27, 2019, [ECF No.

38]. For the following reasons, FCA's Motion to Dismiss, [ECF No. 9], is <u>DENIED</u>, and

Doucet's Motion for Remand, [ECF No. 14], is <u>GRANTED</u>.  Doucet's Motion for Jurisdiction

Discovery, [ECF No. 38], is therefore <u>DENIED</u> as moot.

## I.      BACKGROUND

For purposes of this motion, the facts are drawn from the Complaint and evidence the

parties have proffered in support of their jurisdictional arguments.  In April 2009, Chrysler LLC

filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New

York.  [Compl. ¶ 6; ECF No. 10 at 4; ECF No. 37 at 4].  On June 1, 2009, the Bankruptcy Court

approved the sale of certain Chrysler assets to Defendant FCA.[1]  [Compl. ¶ 7; ECF No. 10 at 5;

ECF No. 37 at 4].  The sale closed on June 10, 2009, [Compl. ¶ 7], and the bankruptcy estate was

closed as fully administered on March 1, 2016, [ECF No. 1 ¶ 24].  The terms of the sale

approved by the Bankruptcy Court are memorialized in a "Master Transaction Agreement"

("MTA"), which permitted the sale of assets to FCA "free and clear of all Claims except for

Assumed Liabilities."  [ECF No. 10. at 4–5; ECF No. 37 at 4; ECF No. 1-5 at 3–4].

Though the MTA originally limited "Assumed Liabilities" to claims arising from

products that were manufactured before the bankruptcy sale date and sold after the bankruptcy

sale, [ECF No. 10 at 5; ECF No. 37 at 4; ECF No. 1-4 ("MTA") at 19–20], the terms were later

amended by the parties and approved by the Bankruptcy Court, [Compl. ¶ 8; ECF No. 10 at 6;

ECF No. 37 at 4–5; ECF No. 1-6 at 2; ECF No. 1-7 at 4, 6].  In relevant part, that amendment

expanded the definition of "Assumed Liabilities" to include product liability claims that arise

from Chrysler products sold before the bankruptcy sale date, so long as those claims:

---

[1] The entity which manufactures Chrysler vehicles, including the one at issue in this case, has held no fewer than six names.  [ECF No. 10 at 4–5].  For the purposes of this opinion, the Court refers to the pre-bankruptcy entity that manufactured the vehicle at issue as "Old Chrysler" and the defendant in this action as "FCA."

(A) arise directly from motor vehicle accidents occurring on or after [the bankruptcy sale closing date], (B) are not barred by any statute of limitations, (C) [do not relate] to any alleged exposure to [asbestos] or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

[ECF No. 10 at 6; ECF No. 37 at 4; ECF No. 1-6 at 2].  Product liability claims include any claims:

arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Chrysler, other debtors, or subsidiaries] . . . .

[ECF No. 37 at 5; ECF No. 1-4 at 104].

The 2004 Chrysler Sebring convertible at issue in this case was designed and manufactured by Old Chrysler.  [ECF No. 10 at 4; ECF No. 10-2 ¶ 2].  On April 7, 2003, Old Chrysler "invoiced and shipped" the convertible to a Chrysler dealership in Rhode Island.  [Id.].  The Rhode Island dealership then transferred the vehicle to Defendant Sudbay Chrysler Dodge, Inc. ("Sudbay"), which leased the vehicle to a resident of Needham, Massachusetts on May 8, 2003, [ECF No. 10-2 ¶ 3], before selling the vehicle to a resident of Gloucester, Massachusetts on July 27, 2006, [ECF No. 10-2 ¶ 4].  The vehicle subsequently changed hands in private sales. [ECF No. 10-2 ¶¶ 5–7].  In June 2013, Doucet purchased the vehicle in a private sale from a New Hampshire resident.  [Compl. ¶ 22; ECF No. 10-2 ¶ 7].

In May 2015, Doucet was riding in the front passenger seat when the vehicle was involved in a moderate frontal collision in Hudson, New Hampshire.  [Compl. ¶¶ 10–11]. During the collision, Doucet sustained a traumatic brain injury when the vehicle's passenger side A-pillar, which supported the vehicle's roof and windshield, struck Doucet.  [Id. ¶¶ 11–13].

Doucet alleges that defects in the vehicle or its component parts caused his injuries, [Id. ¶¶ 25,

30, 31], and asserts negligence and breach of warranty claims against FCA, [Compl. ¶¶ 32–48],

and against Sudbay, [Id. ¶¶ 49–60].

Though Doucet first filed the Complaint in New Hampshire Superior Court, [ECF No. 10

at 3; ECF No. 37 at 3], FCA removed the case to the United States District Court for the District

of New Hampshire, [ECF No. 10 at 3].  The district court dismissed the case for lack of personal

jurisdiction over FCA, finding that Doucet had not demonstrated the constitutionally required

"relatedness" of his claim to FCA or Old Chrysler's New Hampshire activities.  See Doucet v.

FCA US LLC, No. 18-cv-00627, 2018 WL 4854632 at *6 (D.N.H. Oct. 5, 2018).

Doucet then filed the Complaint in Massachusetts Superior Court.  [ECF No. 10 at 3;

ECF No. 37 at 3].  FCA once again removed to federal court, invoking diversity jurisdiction

under 28 U.S.C. § 1332, as well as jurisdiction over cases arising in, arising under, or relating to

cases under title 11 ("Bankruptcy Code"), pursuant to 28 U.S.C. § 1334(b).  [ECF No. 1 ¶¶ 25–

26].

## II.    STANDARD OF REVIEW ON FCA'S MOTION TO DISMISS

Doucet bears the burden of demonstrating that the Court may exercise personal jurisdiction

over FCA and Sudbay.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016)

(citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  "Under the prima facie

standard, plaintiffs must proffer 'evidence which, if credited, is sufficient to support findings of

all facts essential to personal jurisdiction.'"  Packs v. Bartle, No. 18-cv-11496, 2019 WL

1060972, at *3 (D. Mass. Mar. 6, 2019) (quoting A Corp., 812 F.3d at 58)).  "[P]laintiffs may not

rely on unsupported allegations in their pleadings," and are "obliged to adduce evidence of

specific facts."  Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first

4

quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  "The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted."  Packs, 2019 WL 1060972, at *3 (citing Phillips, 530 F.3d at 26; Platten, 437 F.3d at 134).

## III.     FCA'S MOTION TO DISMISS

### A.      FCA as a Successor to Old Chrysler

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir.1995)).  "The Due Process Clause of the Fourteenth Amendment allows a state court to exercise jurisdiction over a non[-]resident only where the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  Packs, 2019 WL 1060972, at *3 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Thus, "[t]o establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

Though FCA did not produce the vehicle at issue in this case, it purchased many of the former assets of Old Chrysler, which did produce the vehicle at issue here.  See [ECF No. 10 at 4–5].  "Under generally accepted corporate law principles, the purchaser of the assets of another

corporation does not assume the debts and liabilities of the transferor." Devine & Devine Food

Brokers, Inc. v. Wampler Foods, Inc., 313 F.3d 616, 618 (1st Cir. 2002) (quoting Dayton v.

Peck, Stow, & Wilcox Co., 739 F.2d 690, 692 (1st Cir. 1984)).  Most jurisdictions, including

Massachusetts and the First Circuit, however, recognize exceptions to this general rule and find

purchasers liable in instances where "the purchasing corporation expressly or impliedly agrees to

assume the selling corporation's liabilities."  Devine & Devine, 313 F.3d at 618; Dayton, 739

F.2d at 692 (construing Massachusetts law); Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d

244, 254–55 (Mass. 2008).

"A corporation's contacts with a forum may be imputed to its successor if forum law

would hold the successor liable for the actions of its predecessor."  McClary v. Erie Engine &

Mfg. Co., 856 F. Supp. 52, 57 (D.N.H. 1994) (quoting Williams v. Bowman Livestock Equip.

Co., 927 F.2d 1128, 1132 (10th Cir. 1991)); Mesiti v. Microdot, Inc., 739 F. Supp. 57, 60

(D.N.H. 1990) ("[T]his [c]ourt . . . is persuaded that unless successor corporations are subject to

personal jurisdiction in [actions where successors are subject to the relevant liabilities of

predecessors,] corporations will be encouraged to immunize themselves by fleeing the

jurisdiction and formalistically changing their name." (internal quotation marks omitted) (citing

Bowers v. NETI Techs., Inc., 690 F. Supp. 349, 361 (E.D. Pa. 1988))); see also City of

Richmond v. Madison Mgmt. Grp., 918 F.2d 438, 454 (4th Cir. 1990) ("The great weight of

persuasive authority permits imputation of a predecessor's actions upon its successor

whenever forum law would hold the successor liable for its predecessor's actions." (citation

omitted)).

FCA argues that it "is not a successor to Old Chrysler and has no successor liability to

Old Chrysler," because Old Chrysler's contacts cannot be imputed to FCA.  [ECF No. 10 at 2, 7,

9–10, 13–14, 17 (emphasis in original)].  FCA's argument fails.  This case arises from liabilities

of Old Chrysler that were expressly assumed by FCA, see Bennett v. FCA US LLC (In re Old

Carco LLC), No. 18-cv-01035, 2018 WL 3155115, at *6 (Bankr. S.D.N.Y. June 26, 2018),

which subjects FCA to the same jurisdictional contacts that would have applied to Old Chrysler

in the absence of the bankruptcy proceedings, see McClary, 856 F. Supp. at 57 (collecting cases).

Here, regardless of whether FCA could otherwise be generally liable as a successor to

Old Chrysler, the MTA includes an exception whereby FCA is liable to the extent outlined in the

Purchase Agreement.  [ECF No. 10 at 5–7].  The language of the Sale Order and the Amended

MTA sets out as "Assumed Liabilities" product liability claims that arise from Old Chrysler

"motor vehicles and component parts" manufactured and sold before the bankruptcy sale, so long

as those claims

> (A) arise directly from motor vehicle accidents occurring on or after [the
> bankruptcy sale closing date], (B) are not barred by any statute of limitations, (C)
> [do not relate] to any alleged exposure to [asbestos] or any other Hazardous
> Material and (D) do not include any claim for exemplary or punitive damages.

[ECF No. 1-6 at 2].

"Product Liability Claims" include any claims related to "personal injury, wrongful death

or property damage, product recalls, defective material claims, merchandise returns and/or any

similar claims" that arise from products "sold, . . . marketed, delivered, distributed, or

transported by [Chrylser]. . . ."  [ECF No. 1-4 at 104].  Here, Doucet alleges that defects in a

Chrysler vehicle manufactured and sold by Old Chrysler caused him to suffer severe injuries

during an accident which took place after FCA had purchased Old Chrysler's assets and assumed

certain of Old Chrysler's liabilities.  [ECF No. 37 at 2–3, 4].  Pursuant to the Sale Order and

Amended MTA, a claim such as Doucet's which arises from a post-bankruptcy accident

involving an Old Chrysler vehicle manufactured, distributed, and sold prior to the bankruptcy is

a voluntarily "Assumed Liabilit[y]" for which FCA is subject to suit.  [ECF No. 1-4 at 18; ECF No. 1-6 at 2]; see also Dearden v. FCA US LLC (In re Old Carco LLC), No. 17-cv-01062, 2018 WL 1352695, at *2, *5 (Bankr. S.D.N.Y. Mar. 15, 2018) (finding that FCA is subject to liability according to the terms of the Sale Order and Amended MTA, which state that, "[e]xcept for Assumed Liability expressly set forth in the Purchase Agreement . . . . the Purchaser shall not have any successor, derivative, or vicarious liabilities . . . ."); In re Old Carco LLC, 2018 WL 3155115 at *2–3, *7 (quoting the Sale Order and Amended MTA and finding FCA subject to suit for Assumed Liabilities).

> **B.      Personal Jurisdiction Pursuant to Massachusetts' Long-Arm Statute and Requirements of Due Process**

Having determined that under the terms of the Sale Order and Amended MTA, FCA is subject to the liabilities and jurisdictional contacts of Old Chrysler for certain post-purchase accidents, the Court must next determine whether it has personal jurisdiction over FCA.  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  "The proper exercise of specific [personal] jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with [due process]."  Id.

> 1.   Jurisdiction Pursuant to Massachusetts' Long-Arm Statute

"Massachusetts's long-arm statute, [Mass. Gen. Laws ch.] 223A, § 3, provides that '[a] court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's one or more specific acts or omissions, as enumerated in the statute."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 54–55 (Mass. 2017).  "For jurisdiction to exist under § 3(a) . . . the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant."  Exxon Mobil Corp.

v. Attorney Gen., 94 N.E.3d 786, 793 (Mass. 2018) (citing Tatro v. Manor Care, Inc., 625

N.E.2d 549, 551 (Mass. 1994)).

The requirements of § 3(a) are construed broadly.  Exxon Mobil, 94 N.E.3d at 793.

"Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient,

generally the purposeful . . . solicitation of business from residents of the Commonwealth, by a

defendant or its agent, will suffice to satisfy this requirement."  Tatro, 625 N.E.2d at 551–52.

"[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often

suffice to satisfy [§ 3(a)'s] threshold for transacting business.'"  Scuderi Grp., LLC v. LGD

Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp. v.

MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)); see, e.g., Hahn v.

Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983) (holding that law school's mailing of

application information and acceptance letter to Massachusetts resident was sufficient to satisfy

§ 3(a)).

"The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor

of asserting personal jurisdiction, by applying a 'but for' causation test."  Packs v. Bartle, 2019

WL 1060972, at *3 (quoting Workgroup Tech, 246 F. Supp. 2d at 112).  The inquiry asks only

whether "the defendant's contacts with the Commonwealth constitute the first step in a train of

events that result[ed] in the [relevant] injury."  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132

F.3d 111, 114 (1st Cir. 1997).  "[A] claim arises from a defendant's transaction of business in the

forum State if the claim was made possible by, or lies in the wake of, the transaction of business

in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017).

Doucet alleges that Old Chrysler, and thereafter FCA, distributed vehicles, including the Sebring at issue, to Massachusetts residents through Sudbay, in Gloucester, Massachusetts. [Compl. ¶¶ 9, 10, 15–17]. The parties agree that FCA is still distributing vehicles through Sudbay. [Id. ¶ 9; ECF No. 16 ¶ 9]. The Sebring at issue was leased and then sold to members of the public at Sudbay. [Compl. ¶¶ 10, 16–17; ECF No. 10-2 ¶¶ 3–4]. Old Chrysler and FCA have therefore solicited Massachusetts residents to purchase Old Chrysler and FCA products and transacted business in Massachusetts. See Tatro, 625 N.E.2d at 551–52 ("[S]olicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy [the 'transacted business'] requirement.").

Doucet's injuries arise from the solicitation and sale of the Chrysler product at issue. Access Now, Inc., 280 F. Supp. 3d at 291. The sale of Chrysler products in Massachusetts "constitute[d] the first step in a train of events that result[ed] in the [relevant] injury." Lyle Richards Int'l, 132 F.3d at 114. Because FCA's business in Massachusetts resulted in the allegedly defective product at issue here entering the market, [Compl. ¶¶ 14–15; ECF No. 10-2 ¶¶ 2–4], and that product subsequently caused a purchaser severe injury, [Compl. ¶¶ 10–13], Doucet's claims fall within the broad construct of 223A § 3(a).

2.   Personal Jurisdiction Consistent with Due Process

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, . . . he have certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Daynard, 290 F.3d at 52 (internal quotation marks omitted) (quoting Int'l Shoe, 326 U.S. at 316). "The First Circuit

has 'broken the minimum contacts analysis into three categories—relatedness, purposeful availment, and reasonableness.'"  Packs, 2019 WL 1060972, at *6 (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)); see also Daynard, 290 F.3d at 60.

a)   Relatedness

In assessing relatedness in a tort action, the Court considers "whether the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)."  Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20–21 (1st Cir. 2018) (citations and internal quotation marks omitted).  The relatedness standard is "flexible [and] relaxed," but does not constitute "an open door."  Compare Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) with Adelson, 652 F.3d at 49.

The sale of a defective or harmful product within the forum is sufficiently related to a foreign defendant's in-forum activities to establish jurisdiction.  See, e.g., Knox v. MetalForming, Inc., 914 F.3d 685, 690–91 (1st Cir. 2019) (finding relatedness requirement "easily met" when foreign defendant's defective equipment was sold by distributor in Massachusetts); Lewis v. Dimeo Const. Co., No. 14-cv-10492, 2015 WL 3407605, at *4 (D. Mass. May 27, 2015) ("Here, relatedness is satisfied by [defendant's] introduction of the product that eventually injured [plaintiff] into the market, together with its efforts to ensure a distribution network for that product in Massachusetts . . . .").

Doucet has asserted and FCA does not dispute facts which support that Sudbay Chrysler is a Massachusetts distributor of Chrysler vehicles, [Compl. ¶ 9], and that the vehicle at issue was first sold by Sudbay in Massachusetts, [Compl. ¶¶ 15–17; ECF No. 10-2 ¶¶ 3–4; ECF No. 10 at 4].  The in-forum sale of the allegedly defective product by Old Chrysler's in-forum

11

distributor, [Compl. ¶¶ 10, 16–17; ECF No. 10-2 ¶¶ 2–4], is sufficiently related to Old Chrysler's

contacts with Massachusetts, and the fact that it was initially shipped to Rhode Island, [ECF No.

10-2 ¶ 2], is of no consequence.  See, e.g., Knox, 914 F.3d at 690–91; Unicomp, Inc. v. Harcos

Pigments, Inc., 994 F. Supp. 24, 25–26 (D. Me. 1998) (finding that a manufacturer's "choice of

distributors" was sufficient to establish relatedness).

b)  Purposeful Availment

"[T]he defendant's in-state contacts must represent a purposeful availment of the

privilege of conducting activities in the forum state, thereby invoking the benefits and

protections of that state's laws and making the defendant's involuntary presence before the

state's courts foreseeable."  Daynard, 290 F.3d at 61 (citation omitted).  "The placement of a

product into the stream of commerce, without more, is not an act of the defendant purposefully

directed toward the forum State."  Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102,

112 (1987).  Purposeful availment requires "[a]dditional conduct" demonstrative of a defendant's

"intent or purpose" to serve the market in the forum.  Id.

A manufacturer that directs that its products be sold in Massachusetts, directly or through

distributors, may demonstrate its intent to serve that forum, and therefore purposefully avail

itself of the privilege of conducting business there.  Knox, 914 F.3d at 691–93; see also Plixer

Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 8 (1st Cir. 2018) (holding that German company

purposefully availed itself by agreeing to fill orders placed by American customers through its

American distributor); Duarte v. Koki Holdings Am., Ltd., No. 18-cv-11995, 2018 WL 6179511,

at *3 (D. Mass. Nov. 27, 2018) ("Here, [defendant] did more than simply launch its products into

the stream of commerce: it purposefully set them on a sure course to retailers in

Massachusetts."); Hilsinger Co. v. FBW Investments, 109 F. Supp. 3d 409, 428 (D. Mass. 2015)

(asserting jurisdiction over foreign manufacturer on the basis that it distributed its products through national retail chains and therefore intended its products to be sold wherever those national chains had stores).

FCA purposefully availed itself of the privilege of conducting activities in Massachusetts by partnering with an in-forum distributor, Sudbay, which sells FCA's products and conducts its own business under FCA's brand names. See [Compl. ¶¶ 9, 16–17; ECF No. 10-2 ¶ 3; ECF No. 16 ¶ 9]. Maintaining a distributor for its vehicles in Massachusetts is "an act [by FCA] purposefully directed toward the forum," Asahi, 480 U.S. at 112, and demonstrates FCA's "intent or purpose" to serve the Massachusetts market, see Duarte, 2018 WL 6179511, at *3. Accordingly, FCA's "involuntary presence before the state's courts [is] foreseeable," Daynard, 290 F.3d at 61, and not based on "random, isolated, or fortuitous contacts with the forum state," A Corp., 812 F.3d at 60.

c) Reasonableness

The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pritzker, 42 F.3d at 63–64 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

As to the first factor, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Plixer, 905 F.3d at 13 (quoting Asahi, 480 U.S. at 114);

see also Pritzker, 42 F.3d at 64 (noting that only the demonstration of a "special or unusual burden" will serve to give any weight to this factor). FCA has identified no special burden, beyond the inconveniences that apply to any litigation involving parties located in different cities or states. [ECF No. 10 at 18]. Therefore, the first factor favors jurisdiction.

Second, Massachusetts' interest in "ensuring its own citizens have an effective forum to seek compensation for personal injuries" by adjudicating this dispute does not apply in this case where the plaintiff is a New Hampshire citizen and the defendant asserts that Massachusetts lacks personal jurisdiction. See Pritzker, 42 F.3d at 63–64. The second factor is therefore of neutral weight.

The third factor, the plaintiff's convenience, is also of neutral weight. Though "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience," Sawtelle, 70 F.3d at 1395, Doucet originally filed this action in New Hampshire. [ECF No. 10 at 3; ECF No. 37 at 3]. FCA then removed to the New Hampshire District Court, which dismissed the case due to a lack of personal jurisdiction. Doucet, 2018 WL 4854632, at *6. Doucet's choice of forum therefore has little effect on the Court's analysis. The Court notes that Massachusetts is a convenient enough venue for a New Hampshire resident, which does offer some support to jurisdiction being reasonable. See Lewis, 2015 WL 3407605, at *6 (acknowledging Massachusetts as a materially convenient venue for claims of a New Hampshire resident on similar facts).

Fourth, the judicial system's interest in obtaining the most effective resolution of the controversy is "[u]sually . . . a wash," Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996), however "avoiding piecemeal litigation or . . . transportation of [witnesses]" from a foreign jurisdiction may favor a particular forum, Lewis, 2015 WL 3407605, at *6 (citing

Nowak, 94 F.3d at 718–19.  In this case, exercising jurisdiction in Massachusetts does not create

piecemeal litigation, nor threaten the effective resolution of the controversy by requiring the

unreasonable transportation of evidence or witnesses.

Finally, the common interests of all sovereigns in promoting substantive social policies

may afford the exercise of jurisdiction in Massachusetts some weight, insofar as Massachusetts

has an interest in "ensuring that products sold within its borders are safe for use by consumers,"

id., but the more persuasive interest that Massachusetts has in protecting its citizens is absent

where, as here, a plaintiff is a citizen of another state.  See Nowak, 94 F.3d at 719 (considering a

state's interest in protecting its citizens in assessing this factor).

Taken in total, the Gestalt factors support the exercise of personal jurisdiction over FCA

in this case.  FCA has not identified any special burden that would weigh against exercising

jurisdiction and the remaining factors are neutral.

## IV.    DOUCET'S MOTION TO REMAND TO STATE COURT

FCA removed this case based on diversity jurisdiction under 28 U.S.C. § 1332 and

pursuant to 28 U.S.C. § 1334(b), which governs jurisdiction over cases related to a bankruptcy

proceeding.  [ECF No. 1 at 1–2].  Doucet contends that federal subject matter jurisdiction is

unavailable and that jurisdiction is proper in Massachusetts Superior Court.  [ECF No. 14 at 1].

For the reasons that follow, Doucet's Motion for Remand is GRANTED.

### A.    Jurisdiction According to 28 U.S.C. § 1332

#### 1.    Standard of Review

Under 28 U.S.C. § 1441(b), "[a] civil action otherwise removable solely on the basis of

[diversity] jurisdiction under section 1332(a) . . . may not be removed if any of the parties in

interest properly joined and served as defendants is a citizen of the State in which such action is

brought." 28 U.S.C. § 1441(b).  However, "plaintiff[s] may not impede a defendant's right of

removal by fraudulently joining a non-diverse defendant who has no real connection to the case."

Surabian Realty Co., Inc. v. CUNA Mut. Grp., 245 F. Supp. 3d 297, 299 (D. Mass. 2017) (citing

Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014)).

"[T]he party seeking removal bear[s] the burden of demonstrating by clear and convincing

evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that

there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against

the non-diverse defendant in state court.'" Id. (quoting Mills v. Allegiance Healthcare Corp.,

178 F. Supp. 2d 1, 5 (D. Mass. 2001)); see also Danca v. Private Health Care Sys., Inc., 185 F.3d

1, 4 (1st Cir. 1999); Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004) (noting

that removal statutes should be strictly construed against removal).  FCA therefore has the

burden of establishing that diversity jurisdiction is proper.

>        2.        Discussion

Sudbay Chrysler Dodge is organized in Massachusetts and has its principle place of

business in Massachusetts.  [Compl. ¶¶ 49–60; ECF No. 1-3 ¶ 9].  FCA argues that Doucet's

claims are time-barred by the applicable statutes of limitations, such that Sudbay cannot be

joined in this case.  See [ECF No. 1 at 9].

Doucet claims to have been incapacitated by mental illness since his claim accrued.  See

[ECF No. 15 at 5–6].  "Pursuant to G.L. c. 260, § 7, a statute of limitations is tolled where a

plaintiff is 'incapacitated by reason of mental illness' at the time his or her cause of action

accrues." McGuinness v. Cotter, 591 N.E.2d 659, 664 (Mass. 1992).  Under Massachusetts'

tolling statute, the statute of limitations is therefore tolled. See O'Brien v. Mass. Bay Transp.

Auth., 541 N.E.2d 334, 337–38 (Mass. 1989) (holding that tolling continues until the disability is

removed, and finding nothing in the statute modifying its application to a claimant with a

guardian).  Given the tolling issues, FCA cannot demonstrate that there is no possibility that

Doucet can state a cause of action against Sudbay.  See Fabiano Shoe Co., Inc. v. Black

Diamond Equip., Ltd., 41 F. Supp. 2d 70, 72 (D. Mass. 1999) ("The plaintiff need not have a

winning case against the allegedly fraudulent defendant; he need only have a *possibility* of

stating a valid cause of action in order for the joinder to be legitimate.").  Because FCA has not

demonstrated that Sudbay is a "fraudulently joined defendant," the case cannot be removed

based on diversity jurisdiction.  See 28 U.S.C. § 1441(b).

### B.      Jurisdiction According to 28 U.S.C. § 1334

Despite the lack of diversity, FCA argues that the Court still has subject matter

jurisdiction under 28 U.S.C. § 1334(b), which provides district courts with jurisdiction over "all

civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C.

§ 1334(b).  Proceedings "arise under" title 11 "if the Bankruptcy Code itself creates the cause of

action," Gupta v. Quincy Medical Center, 858 F.3d 657, 662 (1st Cir. 2017), and "arise in" a

case under title 11 if they are "not based on any right expressly created by title 11, but

nevertheless, would have no existence outside the bankruptcy," In re Middlesex Power Equip. &

Marine, 292 F.3d 61, 68 (1st Cir. 2002); see also Gupta, 858 F.3d at 664–65.  A court may

exercise "related-to" jurisdiction "as long as the outcome of the litigation potentially [could]

have some effect on the bankruptcy estate . . . [or] the handling and administration of the

bankrupt estate."  In re Boston Reg'l Med. Ctr., Inc., 410 F.3d 100, 105 (1st Cir. 2005) (internal

quotation marks and citation omitted); see also Gupta, 858 F.3d at 663.  "The language of . . .

§ 1334 is protean," and jurisdiction under its related-to language "must be determined case-by-

case."  In re Boston Reg'l Med. Ctr., 410 F.3d at 107.

The First Circuit has not adopted a "but for" test when determining whether a claim "arises in" bankruptcy for purposes of jurisdiction under § 1334. Gupta, 858 F.3d at 664–65. Instead, "the fundamental question is whether the proceeding by its nature . . . could arise only in the context of a bankruptcy case." Id. at 664 (citations omitted) (emphasis in original). Tort claims governed by state law "by [their] nature, [do not] arise only in the context of a bankruptcy case." Id. Doucet's state law tort claim therefore does not "arise in" the exclusive context of a bankruptcy case such that the Court could exercise jurisdiction under § 1334.

This tort claim is also not persuasively "related to" a bankruptcy proceeding. Though related-to jurisdiction is "quite broad," id. at 663 (citing In re Boston Reg'l Med. Ctr., 410 F.3d at 105), it "cannot be limitless," id. (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)). Rather, "[t]here must be some nexus between the 'related' proceeding and the bankruptcy case . . . ." In re New England Compounding Pharm., Inc. Products Liab. Litig., 496 B.R. 256, 267 (D. Mass. 2013); see also Celotex, 514 U.S. at 308 n.6 ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."). Once a bankruptcy plan has been confirmed, "fewer proceedings are actually related to the underlying bankruptcy case," In re Boston Reg'l Med. Ctr., 410 F.3d at 106. The exercise of "related to" jurisdiction "without qualification" in any case that affected a debtor or a third party "would [reflect] an unwarranted expansion of federal jurisdiction . . . ." Id.

Here, FCA offers no explanation as to how Doucet's claims could "conceivably have [an] effect on the estate being administered in bankruptcy" so as to bring this action within the statutory grant of related-to jurisdiction. See [ECF No. 19 at 15]; Gupta, 858 F.3d at 663. The Old Chrysler bankruptcy estate closed on March 1, 2016. [ECF No. 1 ¶ 24; ECF No. 15 at 10–11]; see Gupta, 858 F.3d at 665 ("[T]he bankruptcy court's mere approval of [debtors'] sale of

18

assets to [buyer] did not automatically create jurisdiction over all future [claims] somehow related to the [sale order and purchase agreement].").

FCA, therefore, has not met its burden regarding this Court's subject matter jurisdiction under § 1334(b).  Where FCA has similarly failed to demonstrate that this Court may exercise jurisdiction pursuant to § 1332, the Court lacks subject matter jurisdiction over Doucet's claims.

## V.   CONCLUSION

Accordingly, FCA's Motion to Dismiss [ECF No. 9] is <u>DENIED</u>.  Because the Court lacks subject matter jurisdiction under §§ 1332 and 1334(b), however, Doucet's Motion for Remand, [ECF No. 14], is <u>GRANTED</u>.  The case is accordingly remanded back to the Massachusetts Superior Court for Suffolk County.  Doucet's Motion for Jurisdictional Discovery, [ECF No. 38], is therefore <u>DENIED</u> as moot.


**SO ORDERED.**

January 10, 2020                                              /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE